UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ADRIAN BALLESTEROS, | ) | Case No.: 4:10 CV 2406 |
| | ) | |
| Petitioner | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| RODDIE RUSHING, *et al.*, | ) | |
| | ) | |
| Respondents | ) | |

Before the court is *pro se* petitioner Adrian Ballesteros's habeas corpus petition pursuant to 28 U.S.C. § 2241. He names Warden Roddie Rushing of Northeast Ohio Correctional Center (N.E.O.C.C.) and Correctional Corporation of America (CCA) as respondents. Mr. Ballesteros, who is incarcerated at N.E.O.C.C., claims he was falsely charged with a disciplinary infraction. As a result, he seeks the restoration of Good Conduct Time (GCT) that the Bureau of Prisons (BOP) forfeited as a sanction for his violation of a Prison Act Code (PAC).

*Background*

N.E.O.C.C. Unit Manager Delgado was making her rounds on the morning of August 27, 2009 when she entered Unit C08 to check the level of sanitation. She found the unit below acceptable standards and ordered the television sets in the unit turned off until the area was brought up to standard.

At noon that day, the inmates in unit C08 refused to respond when they were called for their midday meal. The last call for chow was made and the entire unit failed to respond. Four

officers were called to the area to assist, including Unit Manager Arvelo, who acted as a spokesperson for N.E.O.C.C. When Ms. Arvelo issued a final directive to report to chow, "inmate George" spoke on behalf of the other prisoners and expressed his frustration over Ms. Delgado's decision to punish the entire unit by turning off the televisions. He declared the inmates would not go to chow until the televisions were turned back on.

Sergeant Pirone retrieved inmate George's identification card. Inmate Guillen then reacted by telling the remaining inmates to all place their identification cards on the table. He stated: "[I]f they are going to take one of us they can take all of us." (Pet. at 4.) The unit was then placed on lock down. During that time, several inmates placed their identification cards on the table or threw them on the floor. The cards were collected as evidence.

An incident report was issued on September 17, 2009. Mr. Ballesteros was charged with Engaging in a Group Demonstration, a PAC 212 violation. A copy of the report was provided to him on September 18, 2009. Mr. Ballesteros denied the charges, stating he only placed his identification card on the table because everyone else did. He added he did not know who ordered the inmates to do that.

Due to the severity of the charges, the Unit Disciplinary Committee (UDC) chair referred the report to the Disciplinary Hearing Officer (DHO) for a hearing. Mr. Ballesteros was advised of his rights before the DHO on September 21, 2009.

A DHO hearing was held on October 6, 2009. Petitioner waived his right to a staff representative, as well as his right to call witnesses. He reiterated his denial of the charges and asserted the incident report was not true. He explained that he placed his identification card on the table because everyone else did.

A Security Investigation Services (SIS) investigation of the incident was conducted and concluded on September 17, 2009. The investigation, conducted by SIS T. Groh, outlined the facts which occurred in Unit C8 on August 27, 2009. The recitation of facts begins at the bottom of page 2 of the Incident Report and indicates Unit Manager Delgado entered Unit C8 to check sanitation in the unit on that date. The balance of facts, which presumably continue on page three of the Incident Report, is not included with the petition.

The report does indicate the DHO relied on the SIS report, as well as Mr. Ballesteros's statement, to conclude he committed the act charged in violation of PAC 212. The DHO sanctioned Petitioner with the loss of 27 days GCT, 30 days disciplinary segregation, and 120 days loss of commissary privileges. A copy of the decision, issued October 12, 2009, was delivered to Mr. Ballesteros on October 13, 2009.

Mr. Ballesteros appealed the DHO's decision. He argued the evidence was insufficient to find him guilty of violating PAC 212. He claims he had earlier decided, on the date of the incident, not to attend lunch because he is "very selective when it comes to what I eat." (Reg. Adm. Appeal No. 564363-R1.) He maintains there is no requirement that inmates attend every meal and his refusal to do so did not qualify as a demonstration. Both the Privatization Management Branch Administrator and National Inmate Appeals Administrator denied his appeals. Having fully exhausted his administrative remedies, Mr. Ballesteros's petition is now properly before this Court.

*Analysis*

Mr. Ballesteros states his right to due process was violated because N.E.O.C.C. routinely files false conduct reports to coerce other prisoners to follow prison rules. He believes this is a policy and practice of the institution. Further, he claims it was improper to find him guilty of

an infraction when there was evidence to the contrary presented at the hearing. Maintaining the charges against him are false, Petitioner believes his placement in segregation for 30 days and the reduction of 27 accrued GCT constitutes cruel and unusual punishment in violation of the Eighth Amendment. Although he does not deny being in Unit C8 at the time other prisoners were refusing to respond to chow call, he maintains he was not participating in a demonstration.

*Due Process - Disciplinary Hearing*

An inmate possesses a due-process liberty interest in good-time credit which has already been earned and in which the inmate is vested, as it will inevitably affect the inmate's duration of confinement. *Sandin v. Conner*, 515 U.S. 472, 483 (1995). As such, prisoners sanctioned with the loss of GCT are entitled to some due process protection. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)("there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution"). Citing 28 C.F.R.§541.15(B) and Program Statement § 5270-07, Mr. Ballesteros claims the UDC failed to follow the requisite Rules Governing Hearing when he was given a copy of the incident report 27 days after the incident. He notes the regulations entitle him to receive the report within three days from the time staff becomes aware of the incident. The BOP's failure to follow procedure "renders the incident report moot" because it violated his due process rights.

The Supreme Court has explained that prisoners are entitled to due process protection that includes: written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety, and a written explanation of the evidence relied on and reasons for disciplinary action. *Id.* A disciplinary decision will satisfy the requirements of procedural due

process when there is "some evidence" to support the disciplinary decision by the fact finder. *Superintendent, Mass. Corr. Institution v. Hill*, 472 U.S. 445 (1985).

Habeas relief is available if a prisoner loses GCT after a prison misconduct proceeding and can establish he was denied some process to which he was due. *See Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973). Here, Mr. Ballesteros was provided notice, a hearing and a written explanation of the disciplinary action taken against him. Thus, he received all of the due process safeguards outlined in *Wolff.*

The fact that he received a copy of the Incident Report 27 days after the incident charging him with engaging in a demonstration did not violate his due process rights. It is "freedom from restraint which, . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," for which the due process clause provides protection. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). The delayed receipt of the incident report did not cause Mr. Ballesteros to suffer an atypical and significant hardship. *Id*.

*False Charges*

Mr. Ballesteros alleges several times that N.E.O.C.C. has a policy of filing false charges against its inmates. Not only are his allegations of an unconstitutional policy conclusory statements without the support of facts or law, there is evidence he committed the acts for which he was charged.

A federal court's review of the quantum of evidence supporting a prison disciplinary board's decision is limited to determining whether some evidence supports the decision. *Preiser*, 411 U.S. at 500. The court is not permitted to re-weigh the evidence presented to the Board. *Id*. The quantity of evidence to support a disciplinary conviction is minimal and does not involve the

independent assessment of witness credibility or weighing of evidence by the federal courts. *Id*. Consequently, a prison disciplinary decision should be upheld if "some evidence" in the record supports the decision. *Id.* at 455-56.

Mr. Ballesteros does not dispute the fact he refused to report to chow on August 15, 2009. He also does not dispute placing his identification card on the table. These acts took place within the midst of a group of inmates who were angered by the unit manager's decision to suspend their television privileges until the unit conditions improved. Even in his petition before this court, Mr. Ballesteros complains:

> She [Delgado] delivered an illegal collective punishment to the entire unit. She Shut Down all the Televisions, because she felt our unit Orderlies did not clean the unit to her standards. She should have fired the orderlies instead of performing a collective punishment. She is way out of line, she could have accomplished a lot more by talking but she chose to show of [sic] her Unit Manager position, to impress her officers; instead of using common sense.

(Pet. at 3.) In spite of his expressed disagreement with Ms. Delgado's decision, Mr. Ballesteros asserts it was unreasonable for the DHO to find he engaged in a group demonstration. Because he does not provide the full record upon which the DHO made his determination, the court does not have the complete incident report. In spite of this, the facts alleged in the petition reveals a factual basis for the findings against him. He admittedly refused to report to chow and put his identification on the table. While he challenges the DHO's interpretation of his 'intent,' his actions mirrored those of the other inmates who were frustrated over their loss of television privileges. Therefore,"some evidence" supports a finding that he engaged in a group demonstration. There is no basis upon which this court can set aside the DHO's sanctions when Petitioner admitted to conduct considered

to be a violation under the BOP code. Regardless of the reason for his actions, Petitioner received all the process to which he was due, and there was 'some evidence' to support the decision to find him guilty of violating Code 212.

Mr. Ballesteros claims of bias are unfounded. An inmate facing the potential loss of good-time credits for a disciplinary infraction is entitled to a decision by an impartial tribunal. *Woodson v. Lack*, 865 F.2d 107, 109- 10 (6th Cir.1989) (citing *Wolff*, 418 U.S. at 564-67)). Mr. Ballesteros does not set forth allegations reasonably suggesting the DHO acted improperly when he determined Petitioner violated PAC 212. In order to ensure the impartiality, "the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident or play any significant part in having the charge(s) referred to the DHO." 28 C.F.R. § 541.16(b). The DHO was none of these. Nothing in the record reveals the DHO determined Petitioner's committed a prohibited act based on false evidence.

*Conclusion*

Based on the foregoing, the Petition is dismissed pursuant to 28 U.S.C. § 2243. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

March 15, 2011